**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT`**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROLANDO ROJAS and EVA BATEN BATEN, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>         Plaintiffs,<br>    v.<br><br>ALPHA WASTE SOLUTIONS, LLC, and GEORGI MARTE,<br><br><br>         Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs ROLANDO ROJAS and EVA BATEN BATEN (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, file this Class and Collective Action Complaint against Defendants, ALPHA WASTE SOLUTIONS, LLC ("Corporate Defendant"), and GEORGI MARTE ("Individual Defendant") (each individually, "Defendant" or, collectively, "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from

Defendants: (1) unpaid overtime premiums; (2) unpaid overtime wages; (3) statutory penalties, (4) liquidated damages; and (5) attorney's fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid overtime wages; (3) statutory penalties; (4) liquidated damages; and (5) attorney's fees and costs.

3.     In addition, Plaintiff BATEN alleges that, pursuant to NYLL, she is entitled to recover from Defendants (1) unpaid minimum wages; (2) unpaid spread of hours premiums; (3) statutory penalties; (4) liquidated damages; and (5) attorney's fees and costs.

4.     Plaintiffs further allege that Defendants willfully filed fraudulent information regarding Plaintiffs and Class members with the Internal Revenue Service ("IRS") when they filed their legally mandatory annual Form 940 and quarterly Form 941 without including wages paid to employees, in violation of 26 U.S.C. § 7434.

5.     Plaintiffs further allege that Defendants breached their contract with Plaintiffs and Class members by failing to pay employer payroll taxes for Plaintiffs and Class members, as required by the Federal Insurance Contribution Act ("FICA"). Alternatively, Plaintiffs allege that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiffs and Class members.

6.     Furthermore, Plaintiff BATEN alleges that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*, by terminating her employment because she took time off to care for an injury sustained on the job. She seeks all applicable remedies under the FMLA, including (1) compensatory damages, (2) punitive damages, (3) back pay, (4) front pay, and (5) attorneys' fees and costs.

7.      Plaintiffs, FLSA Collective Plaintiffs, and Class members are all current or former employees of Defendants' commercial kitchen cleaning and cooking oil recycling company and were all victims of Defendants' scheme to underpay employees. Plaintiffs bring this wage and hour class action on behalf of themselves and all persons, who during the applicable state and federal limitation periods up to and including the present (the "Class Period"), were similarly underpaid by Defendants in violation of protections afforded under the FLSA and laws and regulations of the State of New York.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

9.      This Court has personal jurisdiction because Defendants are citizens of New York and the alleged violations took place in New York.

10.     Venue is proper in this District because a substantial part of the events giving rise to this action took place in this District.

## PARTIES

11.     Plaintiff ROJAS is, and at all relevant times has been, a resident of Queens County, New York.

12.     Plaintiff BATEN is, and at all relevant times has been, a resident of Queens County, New York.

13.     Corporate Defendant ALPHA WASTE SOLUTIONS, LLC is a domestic limited liability company organized under the laws of New York with a principal place of business and an

address for service of process located at 390 Mooney Pond Road, Farmingville, New York 11738. It operates on Long Island and throughout New York City.

14.     Corporate Defendant operates a commercial kitchen cleaning service going by the trade name "Alpha Waste," whose services include kitchen hood cleaning, grease trap cleaning, fire suppression, cooking oil recycling, janitorial cleaning services, duct installation, mold/fire/water restoration, kitchen equipment cleanings, and precipitator cleaning, repairs, and installations for restaurants and food-related businesses throughout the state of New York.

15.     Individual Defendant, GEORGI MARTE, is the owner and president of Corporate Defendant ALPHA WASTE SOLUTIONS, LLC. GEORGI MARTE exercises functional control over the business and financial operations of Corporate Defendant and over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs, and the Class, GEORGI MARTE exercised the power to (and also delegated to managers and supervisors the power to) (i) fire and hire employees, (ii) supervise and control employee work schedules and conditions of employment, (iii) determine the rate and method of compensation of employees, (iv) maintain employment records, and (v) otherwise affect the quality of employment. GEORGI MARTE had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs and the Class.

16.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA, NYLL, and regulations thereunder.

17.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

18.     At all relevant times, Plaintiffs were Defendants' employees within the meaning of NYLL § § 2 and 651.

19.     At all relevant times, Defendants employed at least fifteen (15) employees within the meaning of the FLSA and the NYLL.

20.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such actions have been waived.

## STATEMENT OF FACTS

WAGE CLAIMS FOR PLAINTIFF ROJAS

21.     From on or around October 2021 until on or about May 26, 2022, Plaintiff ROJAS was employed by Defendants' commercial kitchen cleaning company "Alpha Waste."

22.     Throughout Plaintiff ROJAS's employment by Defendants, Defendants assigned Plaintiff ROJAS a daily route with over 30 restaurants in New York, Bronx, Queens, Kings, and Richmond counties that had contracted for Defendants' services.

23.     Plaintiff ROJAS' duties included handling and transporting other employees, equipment, and materials, including taking used cooking oil from the restaurants to Defendants' refining plant.

24.     Defendants provided Plaintiff ROJAS with a company vehicle to perform his duties. At the end of Plaintiff ROJAS' shift, he was required by Defendants to return the vehicle to their facilities in Farmingdale, NY.

25.     For the duration of Plaintiff ROJAS's employment by Defendants, he was paid weekly by company check at a fixed rate of $200 per 12-hour shift.

26.     Throughout Plaintiff ROJAS' employment with Defendants, Plaintiff ROJAS has worked the same schedule set by Defendants: Monday through Friday from 6:00 a.m. to 6:00 p.m. and twice a month on Saturdays from 6:00 a.m. to 6:00 p.m., for a total of sixty (60) to eighty-four (84) hours per week.

27.     Accordingly, he was paid $1000/week on weeks when he worked 5 days and $1200 when he worked six days.

28.     However, Defendants required Plaintiff ROJAS to worked beyond his scheduled shift without additional compensation. He was responsible for returning the company vehicle to Defendants' parking lot at the end of each shift. And, two or three times a week, this caused him to complete his shift at 6:30 pm rather than 6:00 pm.  Since Plaintiff ROJAS's and Defendants had agreed that he would be paid $200 per 12-hour shift, his effective hourly wage was $16.66, but he was never paid this sum for the extra hour or so of unscheduled labor he performed each week.

29.     Other FLSA Collective Plaintiffs and Class members were similarly time-shaved by Defendants.

30.     Defendants also failed to pay Plaintiff ROJAS a proper overtime premium for his overtime work. Since he was working 12 hours each day, he was already working overtime hours by Thursday, after around 4 hours of work. So, most of his hours that day were overtime hours, as were all his hours on Friday and Saturday (if worked that week).  But Plaintiff ROJAS was paid exactly the same thing on Thursday, Friday, and Saturday as he was on Monday, Tuesday, and Wednesday, when he was working straight-time hours.  There was no agreement between Plaintiff ROJAS and Defendants that the daily $200 would somehow cover overtime premiums.

31.     Other FLSA Collective Plaintiffs and Class members also failed to receive proper overtime premiums from Defendants, owing to a fixed daily wage that was never changed to reflect overtime work.

32.     Defendants classified Plaintiff ROJAS as an independent contractor.  But he was, in fact, an employee.  Defendants dictated the time and manner of his work, instructing him to use their vehicle and return it to their facilities.

33.     Defendants failed to provide Plaintiff ROJAS with a proper wage notice.

34.     Because Defendants paid Plaintiff ROJAS with a hand-filled company check, he also never received any wage statements from Defendants.

35.     Defendants' violations of FLSA and NYLL were willful, as Defendants were perfectly aware of what hours Plaintiff ROJAS was working and that he was an employee rather than an independent contractor.

WAGE CLAIMS FOR PLAINTIFF BATEN

36.     From on or around October 2021 until on or about May 26, 2022, Plaintiff BATEN was employed by Defendants' commercial kitchen cleaning company, "Alpha Waste."

37.     Throughout Plaintiff BATEN's employment by Defendants, Defendants assigned her a daily route with over 30 restaurants in New York, Bronx, Queens, Kings, and Richmond Counties that had contracted for Defendants' services.

38.     Plaintiff BATEN's duties included handling and transporting other employees, equipment, and materials, including taking used cooking oil from the restaurants to Defendants' refining plant.

39.     Defendants provided Plaintiff BATEN with a company vehicle to perform her duties. At the end of her shift, she was instructed by Defendants to drive to their parking lot in Farmingville, NY to park the company vehicle.

40.     Plaintiff BATEN worked alongside Plaintiff ROJAS.

41.     During the duration of Plaintiff BATEN's employment by Defendants, she was paid weekly by company check at a fixed rate of $150 per 12-hour shift. Her wages would be tacked on to Plaintiff ROJAS's wages in a single check.

42.     Throughout Plaintiff BATEN's employment with Defendants, she worked the same schedule set by Defendants: Monday through Friday from 6:00 a.m. to 6:00 p.m. and twice a month on Saturdays from 6:00 a.m. to 6:00 p.m., for a total of sixty (60) to eighty-four (84) hours per week.

43.     Accordingly, she was paid $750/week on weeks when she worked 5 days and $900 when he worked six days.

44.     However, Defendants required Plaintiff BATEN to worked beyond her scheduled shift without additional compensation. She (along with Plaintiff ROJAS) was responsible for returning the company vehicle to Defendants' parking lot at the end of each shift. Two or three times a week, this caused her to complete her shift at 6:30 pm rather than 6:00 pm.  Since Plaintiff BATEN and Defendants had agreed that She would be paid $150 per 12-hour shift, her effective hourly wage was $12.50, but she was never paid this sum for the extra hour or so of unscheduled labor she performed each week.

45.     Other FLSA Collective Plaintiffs and Class members were similarly time-shaved by Defendants.

46.     Defendants also failed to pay Plaintiff BATEN a proper overtime premium for her overtime work. Since she was working 12 hours each day, she was already working overtime hours on Thursday, after around 4 hours of work. So, most of her hours that day were overtime hours, as were all her hours on Friday and Saturday (if worked that week).  But Plaintiff BATEN was paid exactly the same thing on Thursday, Friday, and Saturday as she was on Monday, Tuesday, and Wednesday, when she was working straight-time hours.  There was no agreement between Plaintiff BATEN and Defendants that the daily $150 would somehow include overtime hours.

47.     Other FLSA Collective Plaintiffs and Class members also failed to receive proper overtime premiums from Defendants, owing to a fixed daily wage that was never changed to reflect overtime work.

48.     Because Plaintiff BATEN's effective hourly wage of $12.50 was below both the New York City and Long Island minimum wages, Defendants are also liable to Plaintiff BATEN for failing to pay the minimum wage, in violation of NYLL. And because Plaintiff BATEN worked shifts lasting longer than 10 hours, Defendants are also liable for failing to pay her a spread-of-hours premium for each shift.

49.     Defendants also paid some other Class members less than the minimum wage and failed to pay those Class members a spread-of-hours premium for their 12-hour shifts.

50.     Defendants classified Plaintiff BATEN as an independent contractor.  But she was, in fact, an employee.  Defendants dictated the time and manner of her work, instructing her to use their vehicle and return it to their facilities at the end of the day.

51.     Defendants failed to provide Plaintiff BATEN with a proper wage notice.

52.     Because Defendants paid Plaintiff BATEN with a hand-written check, she also never received any wage statements from Defendants.

53.     Defendants' violations of FLSA and NYLL were willful, as Defendants were perfectly aware of what hours Plaintiff BATEN was working and that she was an employee rather than an independent contractor.

FAMILY MEDICAL LEAVE ACT CLAIM FOR PLAINTIFF BATEN

54.     On April 11, 2022, at around 8:30 a.m., while in the course of her employment with Defendants, Plaintiff BATEN was caused to trip and/or slip and fall while exiting Defendants' company vehicle, resulting in a grievous foot injury.

55.     When Plaintiff ROJAS called Defendant MARTE to inform him of Plaintiff BATEN's injury, Defendant MARTE directed him to bring Plaintiff BATEN to the hospital for treatment but to not inform the doctors of where or how the accident occurred.

56.     Defendant MARTE advised Plaintiffs that Plaintiff BATEN could not obtain Worker's Compensation benefits but that he would cover her medical expenses and give her time off.

57.     While at the hospital, Plaintiff BATEN received flowers with a message written in Spanish from Defendants. *See* **Exhibit A.**

58.     On April 21, 2022, Plaintiff BATEN was discharged from the hospital.

59.     However, Defendants were upset that Plaintiff BATEN required a leave of absence to fully recover. And so, on May 28, 2022, Defendants issued a letter in Spanish on company letterhead purporting to accept Plaintiffs' resignation. *See* **Exhibit B**. This was a misrepresentation, however, as Plaintiffs had never resigned. So, Defendants effectively terminated Plaintiffs.

60.    In terminating Plaintiff BATEN because she required medical leave, Defendants violated her rights under the Family Medical Leave Act ("FMLA"), which requires that employees be granted up to 12 weeks of such leave per year.

61.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff BATEN is entitled to punitive damages.

PLAINTIFFS' IRS FALSE-FILING CLAIMS

62.    At all relevant times, Defendants issued a check made payable to Plaintiff ROJAS in the amount of $1,750.00 as compensation for services rendered by both himself and Plaintiff BATEN. Other employees of Defendants were also paid with a hand-filled check.

63.    As a result of this policy, Defendants failed to provide Plaintiffs and Class members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiffs and Class members.

64.    Because they failed to account for these monies in their IRS filings Defendants filed fraudulent information with the IRS when they filed their legally mandatory annual Form 940 and quarterly Form 941. Defendants were required to report all sums paid to employees on these forms. However, Defendants did not report all sums paid because they failed to include monies paid to Plaintiffs and Class members—since their hand-filled checks were never accompanied by the wage statements that could have been the basis of the Forms 940 and 941 filings. Accordingly, these filings were fraudulent, having failed to accurately represent the amount of money that Defendants actually paid their employees, in violation of 26 U.S.C. § 7434.

65.    Under 26 U.S.C. § 7434(b), Defendants are liable for at least $5,000 to Plaintiffs and Class members for each fraudulent filing made.

PLAINTIFFS' BREACH OF CONTRACT CLAIMS

66.     Defendants breached their contract with Plaintiffs and Class members by failing to pay the employer's share of Social Security and Medicare taxes for each employee.

67.     As a result of this failure, Plaintiffs and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

68.     The implied covenant of good faith and fair dealing required Defendants to pay the employer's share of FICA taxes for their employees, since employees would reasonably expect their employer to obey the law.

69.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and Class members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

PLAINTIFFS' UNJUST ENRICHMENT CLAIMS

70.     As an alternative to their breach of contract claim, Plaintiffs allege that Defendants unjustly enriched themselves at the expense of Plaintiffs and Class members by retaining monies that should have been remitted to the IRS on behalf of Plaintiffs and Class members.

71.     It is unjust for Defendants to keep for themselves monies that should be funding their retirement benefits.  It is also unjust that, because of this, Plaintiffs and Class members are liable to the IRS for sums that should have been paid by Defendants.

72.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

73.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former employees compensated on a daily fixed rate (including, but not limited to, drivers, assistants, cleaners, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

74.     Plaintiffs and other FLSA Collective Plaintiffs are similarly situated. They have or have had substantially similar job requirements and pay provisions, and are or have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs overtime premiums for overtime work.

75.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

76.     Plaintiffs bring claims under NYLL for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former  employees compensated at a daily fixed rate (including, but not limited to, drivers, assistants, cleaners, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class members").

77.     In addition, Plaintiff BATEN brings claims on behalf of a subclass of employees paid below the statutory minimum wage in the State of New York ("Subminimum Wage Subclass" or "Subclass").

78.     Plaintiffs and Class/Subclass members are or have been similarly situated, have had substantially similar job requirements and pay provisions, and are or have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure to pay all wages owed, including overtime compensation, due to a policy of misclassifying non-exempt workers as independent contractors.

79.     Class/Subclass members are readily ascertainable. Their number and identity can be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class/Subclass member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

80.     The proposed Class/Subclass is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are based are presently within the sole control of Defendants. There is no doubt that there are more than forty (40) Class/Subclass members.

81.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class/Subclass, and the relief sought is typical of the relief that would be sought by each member of the Class/Subclass in separate actions.

82.    All Class members were subject to the same corporate practices of Defendants of: (i) failing to pay for all hours worked; (ii) failing to pay overtime premiums; (iii) failing to provide wage statements and wage notices in compliance with the NYLL; (iv) filing false information returns for Plaintiff and Class members; (v) breaching their  contract with, or unjustly enriching themselves at the expense of, Plaintiff and Class members by failing to pay FICA taxes.

83.    Subclass members were also subject to the same uniform corporate practices: (i) failing to pay minimum wage and (ii) failing to pay spread of hours premiums.

84.    Defendants' corporate-wide policies and practices affected all Class/Subclass members similarly. Plaintiffs and other Class/Subclass members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

85.    Plaintiffs are able to fairly and adequately protect the interests of the Class/Subclass and have no interests antagonistic to the Class/Subclass. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

86.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by

addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

87.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide unnamed class members with a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

88.     There are questions of law and fact common to the Class and/or Subclass that predominate over any questions affecting only individual class members, including:

i.  Whether Defendants employed Plaintiffs and the Class within the meaning of NYLL;

ii.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class/Subclass members properly;

iii.  At what common rate, or rates subject to common methods of calculation, were Defendants required to pay Plaintiffs and Class/Subclass members for their work;

iv.   Whether Defendants properly notified Plaintiffs and Class members of their regular hourly rate and overtime rate;

v.   Whether Defendants failed to pay overtime premiums to Class members;

vi.   Whether Defendants paid Class members of all hours worked;

vii.   Whether Defendants filed false information returns about Class members with the IRS;

viii.   Whether Defendants failed to pay their share of FICA taxes for Class members to the IRS.

ix.   Whether Defendants failed to pay the minimum wage and spread-of-hours premiums to Subclass members;

x.   Whether Defendants provided proper wage statements to Plaintiffs and Class members per requirements of NYLL; and

xi.   Whether Defendants provided proper wage notices to Plaintiffs and Class members at their date of hiring and annually thereafter, as required by NYLL.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

89.   Plaintiffs reallege all the preceding paragraphs of this Complaint as if fully alleged herein.

90.   Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

17

91.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

92.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

93.     At all relevant times, Defendants had a policy and practice of failing to pay overtime premiums for overtime work, due to misclassifying employees as independent contractors and compensating them on a daily fixed rate without regard for whether employees were working overtime.

94.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs proper wages, including overtime premiums, when Defendants knew or should have known such was due.

95.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

96.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

97.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

98.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW

### (Brought individually and on behalf of the Class)

99.     Plaintiffs reallege all the preceding paragraphs of this Complaint as if fully set forth herein.

100.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

101.     Defendants knowingly and willfully had a policy and practice of (a) failing to pay Class members all wages due, including overtime premiums and (b) failing to pay Subclass members the minimum wage and spread of hours premiums.

102.     Defendants knowingly and willfully failed to properly notify employees of their overtime rate, in direct violation of NYLL.

103.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage and hour notices, at date of hiring and annually thereafter, as required under NYLL § 195(1).

104.     Defendants knowingly and willfully operated their business with a policy of not providing proper and accurate wage statements, as required under NYLL § 195(3).

105.     Due to Defendants' NYLL violations, Plaintiffs and Class/Subclass members are entitled to recover from Defendants all unpaid wages, unpaid spread-of-hours premiums, interest, and reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

### (Brought individually and on behalf of the Class)

106.    Plaintiffs reallege all the preceding paragraphs of this Complaint as if fully set forth herein.

107.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

108.    By failing to provide Plaintiffs and Class members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

109.    Defendants filed fraudulent information with the IRS when they filed their legally mandatory annual Form 940 and quarterly Form 941 because they failed to include monies paid to Plaintiff and Class members—since their hand-filled checks were never accompanied by the wage statements that should have been the basis of the Forms 940 and 941 filings. Accordingly, these filings were fraudulent, having failed to accurately represent the actual amount of money that Defendants actually paid their employees.

110.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

111.    Defendants owe Plaintiffs and Class members statutory damages of $5,000 for each violation.

112.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiffs and the Class for reasonable attorney's fees.

## COUNT IV

## BREACH OF CONTRACT

**(Brought individually and on behalf of the Class)**

113.    Plaintiffs reallege all the preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

114.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

115.    When Plaintiffs and Class members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiffs and Class members in accordance with all applicable laws. This involved, *inter alia*, a duty to abide by the Internal Revenue Code and pay all required FICA taxes.

116.    Defendants breached this duty when they decided to not pay their share of FICA taxes. As a result, Plaintiffs and Class members lost part of the benefit of the bargain for which

they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf, but did not.

## COUNT V

## UNJUST ENRICHMENT

### (Brought individually and on behalf of the Class)

117.    Plaintiffs reallege all the preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

118.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

119.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiffs and Class members because they will either (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

120.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiffs and Class members.

## COUNT VI

## INTERFERENCE AND RETALIATION UNDER THE
## FAMILY AND MEDICAL LEAVE ACT
### (29 U.S.C. § 2601 *et seq*)

**(Brought by Plaintiff BATEN individually)**

121.    Plaintiff BATEN reallege all the preceding paragraphs of this Complaint as if fully set forth herein and further allege as follows:

122.    The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period … "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(D).

123.    Section 2615(a) of the FMLA, states in pertinent part:

Interference with rights.

i.    Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

ii.    Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

124.    Defendants are subject to the FMLA as a covered employer. Defendants are a covered employer because they employ 50 or more employees for each working day during each of the 20 or more calendar workweeks in the year preceding their violation of Plaintiff's rights under the FMLA.

125.    Plaintiff BATEN is an eligible employee under the FMLA because she had worked at least 1,250 hours in the 12 months preceding her request for leave.

126.    Defendants interfered with Plaintiff BATEN's rights under the FMLA by terminating her employment when she became injured and needed to take time off to recover.

127.    Plaintiff BATEN seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.    A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class members;

c.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.    An award of all unpaid wages under NYLL and all unpaid overtime premiums under FLSA to Plaintiffs, Class members, and Subclass members;

e.    An award of unpaid spread of hours premiums to Plaintiff BATEN and Subclass members;

f.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages, including overtime wages, pursuant to FLSA and NYLL;

g.    An award of $5,000 in statutory damages to Plaintiffs and each Class member under 26 U.S.C. § 7434;

h.   Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiffs' and Class members' retirement through FICA contributions;

i.   Restitution to Plaintiffs and Class members of all monies that Defendants should have paid to the IRS but instead used to unjustly enrich themselves;

j.   An award of statutory penalties for Defendants' WTPA violations;

k.   An award of all applicable damages under the FMLA;

l.   An award of all prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

m.   Designation of Plaintiffs as Representatives of the Class and Plaintiff BATEN as representative of the Subclass;

n.   Designation of Plaintiffs' Counsel as Class Counsel;

o.   Designation of this action as a class action pursuant to F.R.C.P. 23;

p.   Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Date: September 16, 2022                          Respectfully submitted,

New York, New York                 By:  /s/ *CK Lee*
                                                          C.K. Lee, Esq.
                                                          **LEE LITIGATION GROUP, PLLC**
                                                          C.K. Lee (CL 4086)
                                                          Anne Seelig (AS 3976)
                                                          148 W. 24th Street, 8th Floor
                                                          New York, NY 10011
                                                          Tel.: 212-465-1180
                                                          Fax: 212-465-1181
                                                          *Attorneys for Plaintiffs,*
                                                          *FLSA Collective Plaintiffs*
                                                          *and the Class*